IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| **WALTRINA MIDDLETON**<br>1907 Luke Street<br>Charleston, South Carolina 29414 | : : : : | |
| Plaintiff, | : : | Case No.: 1:19-cv-1899 |
| v. | : : : | **JURY DEMAND ENDORSED** |
| **UNITED CHURCH OF CHRIST BOARD**<br>700 Prospect Avenue East<br>Cleveland, Ohio 44115 | : : : : : | **HEREON** |
| And | : : | |
| **LOCAL CHURCH MINISTRIES**<br>700 Prospect Avenue East<br>Cleveland, Ohio 44115 | : : : : : | |
| Defendants. | : | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Waltrina Middleton ("Plaintiff") files this complaint and demand for jury trial against Defendants United Church of Christ Board and Local Church Ministries ("Defendants") and alleges the following:

**INTRODUCTION**

1. Plaintiff was hired by Defendants on November 15, 2010, as their Minister for Youth Advocacy and Leadership Formation. Her primary responsibilities related to planning Defendants' National Youth Event (NYE), which is held every four years; Youth @ General Synod, a separate youth event held in conjunction with Defendants' biannual General Synod meetings; and supporting regional youth events (RYEs) within the United Church of Christ in partnership with regional leaders and its conferences.

1

2. While Plaintiff was employed by Defendants, she was subjected to discriminatory harassment on the basis of her race and gender and retaliation for engaging in protected activity.

3. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Ohio Revised Code Chapter 4112.

## JURISDICTION AND VENUE

4. The jurisdiction of this court over this controversy is invoked pursuant to 28 U.S.C. § 1331, as it arises under the laws of the United States and presents a federal question; pursuant to 28 U.S.C. § 1332, as there diversity of citizenship between the parties; and pursuant to 28 U.S.C. § 1343, as it seeks to secure monetary, equitable, or other relief under an Act of Congress, specifically Title VII.

5. All conditions precedent to jurisdiction under Title VII and Ohio Revised Code Chapter 4112 have occurred:

    a. Plaintiff timely filed a dual charge of employment discrimination based on race, sex and retaliation with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission (EEOC), EEOC Charge No. 532-2017-00480, on or about January 26, 2017.

    b. The EEOC issued a Notice of Right to Sue to Plaintiff on or about May 23, 2019, and mailed said Notice to Plaintiff on or about May 24, 2019. A copy of this Notice of Right to Sue is made a part hereof and incorporated herein as Exhibit A.

    c. This complaint has been timely filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

6. Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b)-(c), 42 U.S.C. § 2000e-5, and N.D. Ohio Local Civ. R. 3.8(a), because Cuyahoga County is where the unlawful employment practice occurred giving rise to Plaintiff's claims.

7. This court is authorized to award Plaintiff declaratory relief, injunctive relief, monetary relief, and costs, including attorneys' fees, pursuant to pursuant to Title VII and Ohio Revised Code Chapter 4112.

**PARTIES**

8. Plaintiff is a citizen of the State of Illinois.

9. Defendants are Ohio nonprofit corporations that are affiliated with each other within the governing structure of the Protestant Christian denomination known as the United Church of Christ.

10. At all times relevant to this complaint, Plaintiff was an "employee" of Defendants within the meaning of 42 U.S.C. § 2000e(f).

11. At all times relevant to this complaint, Defendants acted or failed to act by and through their duly authorized agents, servants, and employees who conducted themselves within the scope and course of their employment.

**FACTS**

12. Soon after Plaintiff was hired, Jeanne Haemmelmann, one of Defendants' constituents, stated, "I thought you only got the job because you are young, black and from Trinity [United Church of Christ in Chicago]." Plaintiff brought this concern to the attention of her supervisor but no action was taken.

13. On August 29, 2013, following the retirement of Plaintiff's supervisor, Rev. David Scheon, she expressed concern to Defendants' Human Resources Director, Alisa Lewis, that the

only candidates being considered to replace Rev. Scheon were from "one cultural and gender and demographic group." The person hired for that position, Ivy Beckwith, was a white woman.

14. The first time they met, Ms. Beckwith questioned Rev. Middleton about her marital status, in a transparent attempt to figure out if Plaintiff is a lesbian. Ms. Beckwith asked, "Are you married, or do you have a partner?"

15. On February 7, 2014, while discussing Plaintiff's job performance, Plaintiff's supervisor, Ivy Beckwith, stated that Ms. Beckwith understood "exactly what my problem is": that Plaintiff is "a sassy, young, African American woman."

16. On March 20, 2014, Plaintiff complained to Defendants' HR Director Alisa Lewis that she had been subjected to a hostile work environment by Ann Poston, a management employee of Defendants. Ms. Poston was refusing to communicate with Plaintiff and Ms. Poston was spreading false information about a job assignment that Plaintiff had completed in the manner that Ms. Poston had requested.

17. On March 25, 2014, Plaintiff met with her supervisor, Ivy Beckwith, and articulated her concerns about how personal biases and stereotypes among Defendants' managerial staff "create perceptions that are racist, sexist and discriminatory." Ms. Beckwith responded that she did not like it that Plaintiff had expressed her concerns to Human Resources, and that she should work harder to get along with persons holding racist, sexist and discriminatory views because of the money they give to Defendants.

18. On August 6, 2015, Plaintiff's supervisor, Ms. Beckwith, engaged in rude, unprofessional and insensitive conduct toward Plaintiff during a meeting regarding how Plaintiff had conducted herself at the 2015 General Synod. Ms. Beckwith read a statement that she claimed had been written by herself and her supervisor, Rev. J. Bennett Guess. When Plaintiff said that

she would like to take her concern about Ms. Beckwith's conduct and the statement to HR, Ms. Beckwith told me, "Go right ahead. You take everything else to HR."

19. On August 6, 2015, Plaintiff requested that HR Director Lewis provide "urgent mediation" between Ms. Beckwith and Plaintiff due to her concerns about how Ms. Beckwith had treated Plaintiff that morning. Plaintiff also raised the concern with her executive officer with Local Church Ministries (Rev. J. Bennett Guess) without a response. That mediation was never granted.

20. On or about August 19, 2015, Defendants demoted Plaintiff from her position as Minister for Youth Advocacy and Leadership Formation to the position of Minister of Faith Formation: Generational Ministries Curator – Youth and Adults.

21. On August 20, 2015, Plaintiff complained to Defendants' HR Director Lewis that through this demotion "I am being punished for being outspoken about my concerns and also because during General Synod [June 26–30, 2015] I lifted up social justice issues that some groups were not comfortable with as it pertains to addressing racism and [sexual] orientation."

22. Upon learning of Plaintiff's August 2015 demotion from the position of Minister for Youth Advocacy and Leadership Formation and loss of primary responsibility for the National Youth Event, several leaders of the United Church of Christ throughout the country expressed their concern that Plaintiff was being treated unlawfully. These included:

(a) Rev. Dr. Rita M. Root, General Minister of the Eastern Ohio & Western Reserve Associations, who stated her concern to Defendants' supervisor Ben Guess that the manner in which Defendants had mistreated Plaintiff was a "disservice" to the United Church of Christ because Plaintiff, as "a strong African-American woman" was being placed "on the margins";

5

(b) Rev. Traci D. Blackmon, Pastor of Christ the King United Church of Christ in Florissant, Missouri (who now also serves as Defendants' Associate General Minister of Justice & Local Church Ministries), expressed her concern that the manner in which Defendants had mistreated Plaintiff was one more instance of "the diminishing presence of black and brown people in leadership on the national level" of Defendants and "an attempt to mute the voice of the one remaining black leadership voice" of Defendants (*i.e.,* Plaintiff);

(c) Rev. Paul Sadler stated his concern that Plaintiff's "enormous gifts and tireless labor have been disrespected" by Defendants;

(d) Rev. Dr. Jeremiah Wright, Pastor Emeritus of Trinity United Church of Christ in Chicago, communicated to Defendants' General Minister John Dorhauer that Defendants' "racist and egregious" mistreatment of Plaintiff was unjustified because Plaintiff had dramatically increased the attendance at the National Youth Event and improved its financial standing. Dr. Wright then referenced a "heated meeting" that had occurred between Dr. Dorhauer and the United Church of Christ's Black Leadership group at the 2015 General Synod, stating, "It seems like you didn't hear the concerns raised with you by Bernice [Powell Jackson] and by Bishop Flunder. To remove the responsibility for the NYE from Waltrina's portfolio after her successful production makes it seem as if Bishop Flunder was right. Reading a book about the investment in White Privilege doesn't change the white privilege behavior being demonstrated by the leadership of the UCC."

(e) Dr. Iva E. Carruthers, General Secretary of the Samuel DeWitt Proctor Conference of the UCC, wrote to Dr. Dorhauer regarding her concern that

        Defendants had subjected Plaintiff to "an unjustified demotion, an unjust process, intolerance of the prophetic witness evidenced by her commitments to the #BlackLivesMatter movement and transference of her portfolio in a manner that disrespects and ignores the foundational planning she has already provided," as a continuation of "the pattern and consequences of disempowering and releasing staff of African ancestry over the past several years from the national offices [of Defendants]."

(f)    Rev. Shaun C. Drefahl, Pastor of Bainbridge Community United Church of Christ in Chagrin Falls, Ohio, lamented that Defendants had undermined "the role of one of the very few strong, African-American, female voices in the national setting" of Defendants.

23.    Effective September 8, 2015, Plaintiff was again demoted to the position of Associate for National Youth Event Programming and transferred from Defendant Local Church Ministries to Defendant United Church of Christ Board.

24.    Under Defendants' sabbatical policy, Plaintiff was scheduled and approved for a two-month sabbatical beginning October 1, 2015. Defendants ended her sabbatical after two weeks, however, and required Plaintiff to return to active employment.

25.    When Plaintiff was demoted the first time in August of 2015, her supervisor, J. Bennett Guess, misleadingly stated, "To relieve any unnecessary anxiety upfront, you have a job here. This conversation is not leading to a notice of a RIF or termination."

26.    On April 1, 2016, Plaintiff was replaced in her former position of Minister of Faith Formation by Nicole Havelka, who is Caucasian/white.

27. In response to the announcement that Rev. Havelka had been hired to assume Plaintiff's former responsibilities as a Minister of Faith Formation, Rev. Dr. Yvette Flunder, called for the decision to be "front and center" at an upcoming national meeting of Defendants' Collegium.  At the same time, Rev. Delk expressed that "there appears to be a system defect [within Defendants] when it comes to African American staff persons" giving "evidence to the charge of institutional racism. This action appears to support that claim."

28. In August of 2016, Plaintiff was denied advancement to the position of Team Leader for the Office of the Chief Administrative Officer.  Defendants instead promoted a Caucasian/white employee, Valerie Smith, who had inferior qualifications and experience to me.

29. When Plaintiff was demoted the second time, despite Defendants' prior promise of continuing employment, she was assigned to the position of Associate for National Youth Event Programming, a temporary position that was scheduled to end as of August 14, 2016.

30. On June 27, 2016, Defendants terminated Plaintiff's employment.

31. At all times, Plaintiff's job performance for Defendants was satisfactory or better.

32. There exists a causal connection between Plaintiff's race, her gender, her complaints of racism, sexism and harassment and Defendants' harassment of her, their retaliatory treatment of her and their decision to demote her and terminate her employment.

33. The facts stated in this complaint are representative of how Defendants have treated other African American women staff-persons, especially those who address issues of racism and sexism by Defendants and society as a whole.

## FIRST CAUSE OF ACTION—VIOLATION OF TITLE VII
## AND O.R.C. CHAPTER 4112

8

34. Plaintiff repeats and realleges all allegations made in the above-stated paragraphs and incorporates those allegations herein by reference.

35. Defendants violated Plaintiffs' rights under Title VII and O.R.C. Chapter 4112 when they subjected her to harassment based on her race and gender and retaliated against her for engaging in protected activity.

36. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and will continue to suffer damages, including severe economic loss, emotional distress and pain and suffering.

37. Defendants' conduct was intentional, malicious, and recklessly indifferent to Plaintiff's rights under Title VII and O.R.C. Chapter 4112 when it harassed her because of her race and gender and retaliated against her for engaging in protected activity.

## SECOND CAUSE OF ACTION—BREACH OF CONTRACT

38. Plaintiff repeats and realleges all allegations made in the above-stated paragraphs and incorporates those allegations herein by reference.

39. Defendants' supervisor, Ben Guess, gave Plaintiff oral assurances that her job performance was satisfactory and that she could therefore be assured that she would not be terminated from her employment.

40. When Plaintiff was demoted the first time in August of 2015, her supervisor, J. Bennett Guess, misleadingly stated, "To relieve any unnecessary anxiety upfront, you have a job here.  This conversation is not leading to a notice of a RIF or termination."

41. Rev. Guess's statement gave rise to an employment contract between Plaintiff and Defendants whereby she would not be demoted or terminated in the absence of just cause.

9

42. By thereafter demoting and terminating Plaintiff, Defendants breached their employment contract with Plaintiff.

43. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and will continue to suffer damages, including lost wages and other severe economic loss.

### THIRD CAUSE OF ACTION—PROMISSORY ESTOPPEL

44. Plaintiff repeats and realleges all allegations made in the above-stated paragraphs and incorporates those allegations herein by reference.

45. Defendants' supervisor, Ben Guess, gave Plaintiff oral assurances that her job performance was satisfactory and that she could therefore be assured that she would not be terminated from her employment.

46. When Plaintiff was demoted the first time in August of 2015, her supervisor, J. Bennett Guess, misleadingly stated, "To relieve any unnecessary anxiety upfront, you have a job here.  This conversation is not leading to a notice of a RIF or termination."

47. Defendants reasonably expected Rev. Guess's representation to be relied upon by Plaintiff.

48. Rev. Guess's representation was relied upon by Plaintiff.

49. Plaintiff's reliance upon Rev. Guess's representation actually resulted in and was detrimental to Plaintiff in the form of lost employment opportunities and other economic loss.

50. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and will continue to suffer damages, including lost wages and other severe economic loss.

10

**PRAYER FOR RELIEF**

51. Plaintiff repeats and realleges all allegations made in the above-stated paragraphs and incorporates those allegations herein by reference, and respectfully asks that this court grant her the following relief and enter final judgment against Defendants as follows:

a. Declare that Defendants violated Plaintiff's rights under Title VII and Ohio Revised Code Chapter 4112.

b. Award economic damages, including back pay, front pay, prejudgment interest, and lost benefits.

c. Award compensatory damages for Plaintiff's pain and suffering in an amount to be determined by the jury at trial.

d. Award punitive damages.

e. Award equitable relief.

g. Award reasonable attorneys' fees and all costs incurred in connection with this action.

h. Award any further relief deemed just.

                                        Respectfully submitted,

                                        s/ David T. Ball
                                        ROSENBERG & BALL CO., LPA
                                        David T. Ball (0078885)
                                        395 North Pearl St.
                                        Granville, Ohio 43023
                                        Telephone: (614) 316-8222
                                        Facsimile: (866) 498-0811
                                        Email: dball@rosenbergball.com
                                        *Attorneys for Plaintiff Waltrina Middleton*

## JURY DEMAND

Plaintiff hereby demands a trial by a jury of her peers to decide all issues of fact in this case.

                                            s/ David T. Ball
                                            David T. Ball (0078885)